IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

PATRICIA PEYTON                                          PLAINTIFF

VERSUS                        CIVIL ACTION NO: 5:09-cv-136-DCB-JMR

CITY OF YAZOO CITY, MISSISSIPPI, ET AL.

                                                        DEFENDANTS

## OPINION AND ORDER

Currently before the Court is the Defendants' Motion for Summary Judgment as to all of the Plaintiff's claims [docket entry no. 99]. Having carefully considered the Motion, Responses, applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

### I.  Facts and Procedural History

The Plaintiff, Patricia Peyton, was hired as Deputy City Clerk for the City of Yazoo, Mississippi in October 2005. The Plaintiff is an African-American female. In March 2006, the Plaintiff enrolled in the Mississippi Municipal Clerk Certification Training Program and, after taking some ethics classes, alleges that she began to notice actions in the Yazoo City Clerk's office that violated state or federal laws. For example, the Plaintiff alleges that she observed the Clerk's policy of discriminating against African-American owned florists in its flower purchases in favor of white owned florists. In the summer of 2006, the local newspaper

in Yazoo City began publishing letters to the editor and an occasional opinion column written by the Plaintiff's brother-in-law, Edd Peyton (who is also her attorney in this litigation), criticizing the City for similar actions.  Mr. Peyton also published similar opinions on a website.

Soon after Mr. Peyton's letters to the editor began running in 2006, the Plaintiff alleges that Harrell Granberry, the retired City Clerk who was then working part-time as a Special Administrator and Deputy City Clerk, and Jack Varner, a City Alderman, accused the Plaintiff of leaking the information to her brother-in-law that formed the basis for his public criticisms of the City government.  After this accusation, the Plaintiff contends that Granberry and Frances Pearce, a retired Deputy City Clerk then working part time, retaliated against her by limiting her on-the-job training about the daily tasks expected of her as Deputy City Clerk.

In July 2006, City Clerk Shirley Knight resigned.  The City then advertised an opening for the City Clerk position and the Plaintiff applied.  McArthur Straughter, then the Mayor, appointed a five-person citizen committee to choose the new City Clerk from a pool of over 40 applicants.  The Plaintiff was not interviewed for the position.  The City instead hired Linda Caston, who had ten years of experience as the City Clerk for Picayune and Crystal Springs, Mississippi and is a past president of the Mississippi

Municipal Clerks Association.

Nearly two years later, at a July 31, 2008 meeting, the Board of the Mayor and Aldermen of the City of Yazoo("the Board") voted in an Executive Session to cut the Mayor's and all City Hall personnel's salary, including the Plaintiff's, by ten percent.  It also voted to cut by ten percent the salaries of the members of the Fire and Police Departments, and the salaries of all  Judges, City Attorneys, and certain named individuals.  At that same meeting, the Mayor and the Board voted to cut from full-time to part-time the position of the Director of the "Triangle Cultural Center," then held by John Byrd and to move Byrd (a white male) into a part-time position as a purchasing agent at City Hall.  The minutes of that July 31 Board meeting reflect that the changes in Mr. Byrd's position were "an effort to control spending."  The Plaintiff was not given an opportunity to apply for the purchasing agent position but contends that she would have been able to assume those responsibilities as part of her Deputy Clerk position.

The Board of Aldermen and the Mayor next met on August 25, 2008.  Before the meeting, the Plaintiff's brother-in-law, Edd Peyton sent a facsimile to the City Clerk's office demanding that the Board request an opinion from the ethics commission regarding the Board's purchase of veterinary services from Alderman Varner. The Plaintiff did not attend the Board meeting and the events that occurred after that meeting are the subject of dispute between the

parties.  According to the Plaintiff, after the August 25 meeting, Defendant Caston reported to the Plaintiff that Alderman Varner had become extremely angry when confronted with Mr. Peyton's facsimile. Alderman Mickey O'Reilly further told the Plaintiff that members of the Board had discussed whether information was being leaked from inside City Hall to Mr. Peyton.  Alderman James Magee also reported to the Plaintiff that the Mayor had raised problems with the Plaintiff's performance.  The Plaintiff testified in her deposition that Alderman O'Reilly reported to her that Alderman Varner had made a motion to terminate the Plaintiff but that the Board did not vote in favor of it.  Instead, the Board had agreed that Mayor Straughter would call the Plaintiff to discuss her apparent performance problems.

Alderman Magee and Alderman O'Reilly then met the Plaintiff at a local store to tell her that her job might be in jeopardy because the Board had discussed her alleged poor performance.  The Plaintiff was shocked to learn that anyone had complained of her job performance and suspected that the Board's real concern was the critical facsimile sent by her brother-in-law.  The next morning, August 26, 2008, Mayor Straughter called the Plaintiff into his office for a meeting to discuss her performance problems.  The Mayor also indicated that Alderman Varner had been very angry with the Plaintiff because he believed she was responsible for leaking the information to her brother-in-law which formed the basis for

4

his accusatory facsimile.  The Mayor then directed the Plaintiff to attend a specially called Board meeting on August 28, 2008.  The parties dispute whether there was any reason for the Plaintiff to believe that she might be terminated at that meeting.

At the August 28 special meeting, the Board discussed the Plaintiff's performance and whether she was responsible for leaking information to her brother-in-law.  The Plaintiff testified in her deposition that Alderman Varner loudly demanded to know who was leaking information, and raised his voice and a finger towards the Plaintiff while she was sitting an arm's length away from him.  The Plaintiff became upset and presented a letter of resignation to the Board that she had drafted before the meeting.  Indeed, earlier that morning, the Plaintiff had cleaned out her desk and removed her personal belongings from City Hall.  After the Plaintiff tendered her resignation, several members of the Board asked her not to resign and the Board refused to accept her resignation.  The Board did not accept the Plaintiff's resignation until ten days later, on September 8, 2008, after at least two Aldermen had tried to persuade the Plaintiff not to resign.  After the Plaintiff resigned, John Byrd was assigned the Plaintiff's former Deputy Clerk responsibilities.

The Plaintiff then filed her Complaint against the City, the Mayor and Board of Aldermen, and, in both their individual and official capacities, Linda Caston (the City Clerk), Harrell

Granberry (retired City Clerk, later part-time Deputy Clerk), Jack
Varner (Alderman and Mayor Pro Tem), McArthur Straughter (the
Mayor), James Magee (Alderman), Hattie Williams (Alderman), Mickey
O'Reilly (Alderman), and Shirley Knight (the former City Clerk).
Plaintiff asserts the following claims: (1) Retaliation in
Violation of the First Amendment and 42 U.S.C. §§ 1981 and 1983;
(2) Discrimination in Violation of title VII of the Civil Rights
Act; (3) Constructive Discharge in Violation of Mississippi Public
Policy; (4) Retaliation in Violation of Miss Code Ann. § 25-9-171,
et seq.; (5) Civil Conspiracy; (6) Corporate Negligence, Negligent
Hiring, Training and Supervision of Defendant Caston; and (7)
Defamation and Slander.

## II. Summary Judgment Standard

Summary judgment is apposite "if the pleadings, depositions,
answers to interrogatories, and admissions on file, together with
the affidavits, if any, show that there is no genuine issue as to
any material fact and that the moving party is entitled to a
judgment as a matter of law." Fed. R. Civ. P. 56(c). "A fact is
'material' if its resolution in favor of one party might affect the
outcome of the lawsuit under governing law.  An issue is 'genuine'
if the evidence is sufficient for a reasonable jury to return a
verdict for the non-moving party." Ginsberg 1985 Real Estate
Partnership v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994)
(citations omitted).  The party moving for summary judgment bears

the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the non-moving party to show that summary judgment is inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Moreover, "[t]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 252.  The non-movant must instead come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  Summary judgment is properly rendered when the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### III.  Analysis

**A.   Discrimination in Violation of Title VII**

It is difficult to tell exactly which factual allegations support which of the Plaintiff's legal claims.  Nonetheless, with respect to racial discrimination under Title VII, the crux of the Plaintiff's claim appears to be: (1) that the City created the "purchasing agent" position for Mr. Byrd (a white male) and excluded the Plaintiff from even the opportunity to apply for the position; and (2) applied the city-wide ten percent pay reduction to the Plaintiff while sparing Mr. Byrd.

A plaintiff may prove a claim of discrimination either by direct or circumstantial evidence.  Cases based on the latter, like this one, fall under the framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), which requires the Plaintiff to first establish a prima facie case of discrimination. McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007).  To do so, the Plaintiff must demonstrate that she: (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group or treated less favorably than other similarly situated employees outside the protected group.  Id. (citing Wheeler v. BL Dev. Corp., 415 F.3d 399, 405 (5th Cir. 2005)).

If the Plaintiff makes a prima facie showing, the burden then

8

shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. Id. at 557 (citing Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000)). The employer's burden is only one of production, not persuasion, and it involves no credibility assessment. Id. To carry this burden, the plaintiff must rebut each nondiscriminatory reason articulated by the employer. Id. (citing Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003)).

     1. *Purchasing Agent Duties*

     The Defendants argue that assigning purchasing agent duties to John Byrd was not an adverse employment action and thus the Plaintiff cannot set forth a prima facie case of discrimination. In the context of direct discrimination (as opposed to retaliation), only "ultimate employment decisions" such as hiring, granting leave, discharging, promoting, or compensating are adverse employment actions. Id. at 559 (quoting Green v. Adm'rs of Tulane Eudc. Fund, 284 F.3d 642, 657 (5th Cir. 2002)). Poor performance evaluations, unjust criticism, and being placed on probation are not ultimate employment decisions. Id.

     With respect to the 2008 assigning to Byrd part-time purchasing agent responsibilities, the Defendants point out that Byrd was paid $6,000 less per year than the Plaintiff to perform both the part-time purchasing agent and part-time Triangle Cultural Center duties. Moreover, the Plaintiff stated in her deposition

that she did not know whether she would have received increased pay if she had taken on the additional responsibilities of the purchasing agent. Though the Plaintiff argues, as evidence of discrimination, that Byrd was paid $173.09 more per pay period than she was, Byrd was paid more only after the Plaintiff resigned and Byrd assumed her responsibilities in addition to his purchasing agent and Triangle Cultural Center duties. In other words, Byrd made more money than the Plaintiff because he had additional responsibilities.

The Court is persuaded that assigning Byrd the purchasing agent responsibilities was not an "ultimate employment decision." The purchasing agent duties were not a promotion; there is no evidence that they included more opportunity for advancement or were otherwise more desirable than the Plaintiff's Deputy Clerk duties. More importantly, Byrd made *less* money than the Plaintiff performing both his purchasing agent duties and his Triangle Cultural Center duties. The Plaintiff makes much of the fact that the purchasing agent position was "fabricated" and that she was capable of performing those duties. That may be true but in the absence of the position paying more or being demonstrably higher-quality work, it is not a promotion and thus not an ultimate employment decision. Alaniz v. Zamora-Quezada, 591 F.3d 761, 772 (5th Cir. 2009)(holding plaintiff's transfer to different position was not adverse employment action because salary, benefits, and

10

duties remained unchanged and position from which the plaintiff was transferred was not objectively superior so that reassignment was considered demotion).[1]  Accordingly, the Plaintiff has not set forth a prima facie case of direct discrimination with respect to the purchasing agent position.

    2.  *Ten Percent Reduction in Pay*

Next, the Plaintiff alleges she was discriminated against for her race because the City applied a staff-wide ten percent pay reduction to her but not to Byrd.  This claim is easily disposed of because the Plaintiff admits that "Byrd was the only nonsupervisory employee assigned to the City Clerk's office that did not receive the 10 percent pay cut."  Pl. SJ Memo. [docket entry no. 112] at 9. The City defends the exception for Byrd by noting that the decision to move him to a part-time purchasing agent position was made at the same meeting in which the Board voted to enact the ten percent

---

[1] In any event, even if the City's decision to assign Byrd purchasing agent responsibilities was an ultimate employment decision, such that the Plaintiff could make her prima facie case, the Defendants have demonstrated several non-discriminatory reasons for their decision to assign those duties to Byrd.  First, the City was attempting to keep Byrd employed because his full-time job at the Triangle Cultural Center was being reduced to part-time. Second, Byrd had experience working as a purchasing agent whereas the Plaintiff had none.  The Plaintiff has produced no evidence that either of these legitimate reasons for assigning Byrd the purchasing agent responsibilities are pretext and thus the Plaintiff's discrimination claim in this regard would fail even if she could state a prima facie claim.  <u>See</u> <u>McCoy</u>,492 F.3d at 561 (once employer has introduced legitimate reason for decision, plaintiff bears the burden of establishing that such reasons are pretext).

pay cut.  Because Byrd's new combined position paid less than his
previous position, his pay had already been cut and thus the ten
percent pay reduction was not applied to him.   In other words,
though the ten percent pay reduction nominally excluded Byrd, the
evidence reflects that Byrd's pay was, in fact, reduced at the same
time that the Plaintiff's was.   Under these circumstances, the
Plaintiff cannot demonstrate that, with respect to the pay cut, she
was "treated less favorably than other similarly situated employees
outside the protected group."  McCoy, 492 F.3d at 556.  Indeed, the
Plaintiff admitted in her deposition that her reduction in pay was
not based on race.   Accordingly, she cannot establish the prima
facie case for discrimination with respect to the pay reduction and
the Plaintiff's Title VII discrimination claim must be dismissed.[2]

**B.   Retaliation in Violation of the First Amendment and 42 U.S.C.
§§ 1981 and 1983.**

The Plaintiff next claims that Defendants retaliated against
her for her alleged dissemination of information to her brother-in-
law, Edd Peyton, in violation of the First Amendment and Title
VII.[3]  The Plaintiff contends that the information was on a matter

_____

[2] Again, even if the Plaintiff could state a prima facie case,
the Defendants have submitted a legitimate non-discriminatory
reason for the pay reduction (a budget shortfall) and the Plaintiff
has not demonstrated that that reason is pretext.

[3] The Defendants do not address and therefore this Court does
not reach whether claims of retaliation can succeed where the
Plaintiff has not herself opposed any action prohibited by Title
VII or engaged in protected speech but rather is associated with
someone doing those things.

of public concern because it revealed that the City was discriminating on the basis of race in the allocation of contracts to local florists in violation of 42 U.S.C § 1981 and that the City was allowing public officials to contract with it, in violation of State law.  The Plaintiff claims that the Defendants retaliated against her by: (1) failing to hire her for the open City Clerk position in November 2006; and (2) excluding her from work related office conversations and on-the-job training necessary to the performance of her position.[4]

To establish a constitutional claim for First Amendment retaliation, four elements must be shown: (1) that the plaintiff suffered an "adverse employment decision;" (2) that the plaintiff's speech involved a matter of public concern; (3) that the plaintiff's interest in commenting on matters of public concern outweighs the defendants interest in promoting workplace efficiency; and (4) that the plaintiff's speech motivated the defendant's action.  DePree v. Saunders, 588 F.3d 282, 286-87 (5th Cir. 2009).  To establish a claim for retaliation under Title VII, the plaintiff must establish three elements: (1) that she participated in an activity protected by Title VII; (2) her

_____

[4] Though the Plaintiff alleges constructive discharge and the Defendants address constructive discharge in the context of the retaliation claim, a review of the Amended Complaint reveals that the Plaintiff asserts constructive discharge only in connection with a claim that it violated Mississippi public policy.  See Amended Complaint [docket entry no. 76] at ¶¶ 109-120.

13

employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action.  McCoy, 492 F.3d at 557.

With respect to the causal connection element, once the plaintiff submits evidence to establish that connection, the burden shifts to the defendants to show by a preponderance of the evidence that they would have come to the same conclusion in the absence of the protected conduct.  Beattie v. Madison County Sch. Dist., 254 F.3d 595, 601 (5th Cir. 2001) (citing Mt. Healthy City Sch. Dist. Bd of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

1.   *Failure to Hire the Plaintiff as City Clerk*

The Defendants move for summary judgment as to both the First Amendment and Title VII retaliation claims arising from the City's failure to hire the Plaintiff for City Clerk because they contend the Plaintiff has not shown any causal link between the failure to hire and the supposed dissemination of information to her brother-in-law.

In order to fill the open position for City Clerk in 2006, the Mayor appointed a special committee of five citizens to select finalists from among the many applicants.  That Committee interviewed several potential candidates and then recommended four finalists to the Mayor.  The Committee neither interviewed the Plaintiff nor chose her as a finalist.  The Mayor then chose Linda

14

Caston from those four finalists to hire as the new City Clerk.[5]

The Defendants argue that there is no causal link between the Committee's recommendation of other candidates and the Plaintiff's supposed dissemination of information to her brother-in-law because the Plaintiff admitted in her deposition that she had no factual basis to believe that the members of the committee "knew or thought [she] had reported information about the clerk's office." P. Peyton Depo [docket entry no. 99-1] at 94. The Defendants next argue that, even if the Plaintiff could show a causal link between the Board's decision to hire Caston and the Plaintiff's supposed dissemination of information, the City had a legitimate, non-discriminatory reason for hiring Caston over the Plaintiff because Caston was more qualified. Indeed, Caston had ten years experience as a City Clerk whereas the Plaintiff had none.

The Plaintiff counters that the causal relationship can be inferred by the temporal proximity between her brother-in-law's

---

[5] In her summary judgment memorandum, the Plaintiff suggests in passing that the Mayor selected which of the many applicants the special committee would interview. Accordingly, it would seem that the relevant inquiry is whether there is any causal connection between the Plaintiff's distribution of information to her brother-in-law and the Mayor's failure to select the Plaintiff for an interview. Nevertheless, both the Plaintiff and the Defendants focus in their summary judgment papers on a causal connection between the hiring decision made by the members of the special committee and the Plaintiff's alleged dissemination of information to her brother-in-law. In any event, the Plaintiff has not developed any facts to support a causal connection with respect to the Mayor's alleged decision to exclude the Plaintiff from the interview process.

published criticisms of the City government and the City's hiring of Caston as Clerk.  The Plaintiff further argues that one of the Committee members, Phil Williams, testified in his deposition that he was aware of Mr. Peyton's published criticisms of the City government and believed the Plaintiff to have contributed to the publications and that it was important for the City Clerk to maintain confidential information.[6]

With respect to the Plaintiff's argument that causation can be inferred by the fact that her brother-in-law published articles around the same time that the City hired Caston for the City Clerk position, mere temporal proximity is not enough to establish causation.  Strong v. Univ. Healthcare Sys., LLC, 482 F.3d 802, 808 (5th Cir. 2007).  With respect to Williams's testimony that he may have connected the Plaintiff to her brother-in-law's criticism of City Hall, the Court finds that Williams's testimony, read in context, is not sufficient to create a genuine dispute of material fact regarding causation.  First, Williams's testimony regarding the City Clerk's responsibility to maintain confidential information had nothing to do with the Plaintiff or her perceived

---

[6]  The Plaintiff also asserts in her summary judgment memorandum that the testimony of Harrell Granberry establishes a causal link but she does not cite to his deposition transcript or further explain how it does so.  The Court has reviewed the transcript excerpts provided by the Plaintiff and does not find any support therein for a causal connection.  Indeed, it is doubtful one could exist because Granberry was not on the committee that interviewed and recommended the candidates for City Clerk in 2006.

distribution of information to her brother-in-law (he mentioned
social security numbers and other private personal information that
a City Clerk might encounter).   Second, Williams's testimony
regarding any connection he made between the Plaintiff and her
brother-in-law's criticisms of City Hall was weak, at best:

> Q. Do you read any of the letters to the
> editor or the editorials in the Yazoo Herald?
>
> A. Occasionally.
>
> Q. Are you aware of any letters to the editor
> or editorials in 2006 by Edd Peyton
> criticizing the Yazoo City municipal
> government.
>
> A. Vaguely.
>
> Q. Vaguely. Were you aware of those articles
> at the time of the selection process of city
> clerk was ongoing?
>
> A.  I mean, I don't remember them being in
> conjunction with that - at that particular
> time.  It may have been at the same time.  I
> just don't remember.
>
> Q.  Okay.  Are you aware of any association
> between Patricia Peyton and Edd Peyton?
>
> A.  I believe you are brother and sister.
>
> Q.  She's my sister-in-law.
>
> A.  Yes.
>
> Q.  But you are aware there's some -
>
> A.  Some connection, yes.
>
> Q.  At the time of the committee's selection
> process, did you think that Patricia Peyton
> had any influence or contributions to any of
> the letters or editorials written in the Yazoo

> Herald regarding Yazoo City government.
>
> A.   Possibly.  I mean, I don't remember.  I
> would say probably, yes.

P. Williams Depo. [Docket entry no. 111-14] at 31-32.

In short, Williams did not recall precisely whether he connected the Plaintiff to her brother-in-law's published opinions but stated only that he "probably" did.  More importantly, he did not testify that the probable connection had any impact on his choice of which candidates to recommend for the City Clerk position.  Moreover, three other members of the City Clerk hiring committee testified that they were not even aware of Mr. Peyton's published criticisms of the City government.  On balance, the testimony that only one of the five members of the hiring committee "probably" connected the Plaintiff with her brother-in-law's published opinions, without further testimony that such a connection influenced his decision not to recommend the Plaintiff, does not create a genuine issue of material fact regarding causation.  Beattie, 254 F.3d at 603 (affirming summary judgment for First Amendment retaliation claim because the plaintiff had not established causation where all school board members responsible for firing the plaintiff testified that they were not aware of the plaintiff's protected activity); Bowen v. Watkins, 669 F.2d 979, 985 (5th Cir. 1982) (holding one city council member's vote in favor of alleged retaliatory transfer could not establish causation where the same decision would have been reached without that vote).

Significantly, even if the Plaintiff had sufficiently established a causal link for the prima facie case, the Defendants have met their burden to show, by a preponderance of the evidence, that they would have come to the same conclusion in the absence of the protected conduct because Caston was objectively more qualified than the Plaintiff to be City Clerk given that she had ten years experience as City Clerk while the Plaintiff had none. See Watkins v. Texas Dept. of Criminal Justice, 269 Fed.Appx. 457, 462-63 (5th Cir. 2008) (affirming summary judgment on retaliation claim where plaintiff was not clearly better qualified than persons promoted instead); Dupre v. West Baton Rouge Sch. Bd., 201 Fed.Appx. 218, 219 (5th Cir. 2006)(affirming grant of summary judgment on retaliation claim where defendants demonstrated that person promoted was more qualified than plaintiff). Indeed, the Plaintiff admitted in her deposition that Caston was more qualified. In the face of Caston's obviously superior experience, the Plaintiff has not demonstrated that there exists any genuine dispute of fact regarding her retaliation claim based on the hiring of Caston as City Clerk in 2006.

2.   *Excluding the Plaintiff from Workplace Conversation and On-the-Job Training*

The Plaintiff also alleges that she was retaliated against by Granberry and Pearce's failing to provide her sufficient on-the-job training and excluding her from workplace conversations and meetings. The Plaintiff cannot establish a prima facie case of

19

retaliation with these minor complaints, however, because they do not rise to the level of an "adverse employment action." Nor has the Plaintiff demonstrated a causal connection between them and the Plaintiff's brother-in-law's criticism of the City government.

Until recently, the Fifth Circuit had held that the standard for adverse employment action was the same for both direct discrimination and retaliation claims under Title VII. As discussed in part A above, that standard required a plaintiff alleging discrimination to show an "ultimate employment decision" such as hiring, granting leave, discharging, promoting, or compensating. McCoy, 492 F.3d at 559. But in 2006, the Supreme Court announced a more lenient definition of "adverse employment action" in the context of Title VII retaliation claims. Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006). Under the new standard, an adverse employment action is any action that "a reasonable employee would have found [to be] materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68 (quotations omitted).

Though the Burlington Northern holding applied only to Title VII retaliation claims, the Fifth Circuit has suggested that its "reasonable employee" standard also applies in the context of First Amendment retaliation, DePree, 588 F.3d at 288, and at least one other district court in this Circuit has applied Burlington

20

Northern to First Amendment retaliation claims.  Laredo Fraternal Order of Police v. City of Laredo, 2008 WL 678698 (S.D. Tex. Mar. 12, 2008).  Accordingly, this Court holds that the "reasonable employee" standard applies to  determine whether the Defendants' actions were "adverse employment actions" for both the Title VII and First Amendment retaliation claims.

The Plaintiff's allegations that she was excluded from conversation and on-the-job training do not rise to the level of actions that would have dissuaded a reasonable worker from complaining of discrimination or making protected speech.  The Plaintiff testified in her deposition that she was denied training because she was not given the opportunity to learn payroll or duties other than filing and answering the phone.  But she also admitted that the training she did not receive "wasn't a whole lot." P. Peyton Depo. [docket entry no. 99-1] at 67.  Moreover, the Defendants have submitted evidence that the Plaintiff received formal training at the City's expense, in the form of classes for the Municipal Clerk Certification Training Program, throughout 2007 and 2008, well after the Plaintiff's brother-in-law began publicly criticizing the City government.  The Plaintiff explains away this opportunity for formal training by arguing that to withhold formal training would have been too obvious an adverse employment decision.  In context, this Court holds that the minor on-the-job training and workplace conversation from which the

Plaintiff was allegedly excluded are not adverse employment actions. The Fifth Circuit has held, even under the Burlington-Northern standard, that allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute adverse employment actions. King v. Louisiana, 294 Fed.Appx. 77, 85 (5th Cir. 2008). Here, the withholding of informal training related to accounting, which the Plaintiff admits was not much, when the Defendants continued to provide the Plaintiff with formal training at their own expense, is not an action that would have dissuaded a reasonable employee from complaining of discrimination or making protected speech.

Moreover, the Plaintiff has demonstrated no causal connection between the exclusion from conversation and informal training and her brother-in-law's criticism of the City Government, other than temporal proximity. The Plaintiff has not introduced testimony of any of her supervisors at City Hall related to the Plaintiff's alleged exclusion or to any connection between the exclusion and the opinions of the Plaintiff's brother-in-law. The Plaintiff's own conclusory belief that there was a causal link and a temporal connection are simply not enough to create a triable issue of fact with regard to causation. Strong, 482 F.3d at 808 (temporal proximity alone not sufficient to establish causation for retaliation claim).

Accordingly, the Plaintiff's Title VII and First Amendment

22

retaliation claims must be dismissed because the Plaintiff has not stated a prima facie case for either.

## C.  State Law Claims

All that remains after the Plaintiff's federal discrimination and retaliation claims are dismissed are several state law claims under Mississippi law.   This Court's jurisdiction over the Plaintiff's state law claims rests on the invocation of supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because there is no independent basis for jurisdiction over them.   Where federal claims are dismissed before trial, the state claims ordinarily should be dismissed as well.   Wong v. Stripling, 881 F.2d 200, 204 (5th Cir. 1989) (citing United Mine Workers v. Gibbs, 383 U.S. 715, 724 (1966)).   Accordingly, the Court dismisses the Plaintiff's remaining state law claims, without prejudice.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [docket entry no. 99] is **GRANTED** with respect to the Plaintiff's claims of discrimination under Title VII and retaliation under Title VII and the First Amendment.

**IT IS FURTHER ORDERED** that the Defendant's Motion in Limine to Exclude Testimony of Dr. Linda Glover [docket entry no. 101] is **MOOT.**

**IT IS FURTHER ORDERED** that the Plaintiff's Motion to

Supplement Response to Defendants' Motion for Summary Judgment and Memorandum [docket entry no. 124] is **GRANTED.**

    **SO ORDERED AND ADJUDGED** this the 7th day of January 2011.

<u>   s/ David Bramlette       </u>
**UNITED STATES DISTRICT JUDGE**